No 28,070.

THE STATE OF KANSAS, ex rel. WILLIAM J. WERTZ, County Attorney, *Appellee*, v. FRED HORN et al., *Appellants*.

(270 Pac. 597.)

Opinion filed October 6, 1928.

*Clyde M. Hudson,* county counselor, for the appellants.

*William J. Wertz,* county attorney, *George L. Adams, Wilmer B. Harms* and *P. K. Smith,* assistant county attorney, for the appellee.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *T. M. Lillard, Bruce Hurd* and *O. B. Eidson,* all of Topeka, as *amici curiæ.*

The opinion of the court was delivered by

HOPKINS, J.: This controversy involves an interpretation of section 9 of chapter 255 of the Laws of 1927, which provides for reimbursement to the taxpayers of funds paid by them for the construction of hard-surfaced roads in benefit districts when such funds

have been collected and are available for such reimbursement purposes. The pertinent part of section 9 reads:

"The board of county commissioners in any county in which state highways have been built . . . shall . . . when such fund is not necessary to construct a state highway in accordance with some federal-aid specification to connect with such highway so constructed across an adjoining county, apply the county and state road fund provided for in this act to the payment of the installments of the benefit district tax assessed on the property in such benefit districts as the same become due, and to the reimbursement to the taxpayers, of all assessments made and collected on such lands, but no more than one of the assessments made and collected shall be reimbursed to the taxpayers in the district in any one year, such payments and reimbursements to be made in full upon the land which lies one mile or more from the road for which the benefit district tax was assessed, and upon the lands which lie within one (1) mile of such road in the amount over and above two per cent (2%) of the appraised value of said land and improvements as the same was fixed and used in making such special assessments, except, however, that when the road which the benefit-district tax was assessed is a class 'B' road as defined by section 8 of this act, then the reimbursement upon the land which lies within one (1) mile of such road shall be in an amount equal to fifty per cent (50%) of such assessments."

It is conceded that there were sufficient funds under control of the county commissioners not necessary to construct state highways in accordance with federal-aid specifications; that such funds are not necessary to maintain the roads now constructed in the county and are available for the purpose of paying installments now due. The trial court made certain findings from which an appeal has been taken by the commissioners. One of them reads:

"Where a taxpayer whose land is located one mile or more from the road for which the benefit district tax was assessed, has paid, in one payment, the full amount assessed against his land, he should be reimbursed by a single payment, the full amount so paid, without interest."

Under the statute in question, a landowner could pay his assessment in full in one payment or in installments covering a period of twenty years. The question arises under this finding of the court, whether when a taxpayer has paid his full assessment in one installment, he should be reimbursed in one year for the entire amount. The defendants contend "that to do so would work a hardship upon other landowners paying their assessment by installments; . . . that this especially would be true should the legislature repeal the reimbursement statute under consideration."

The construction placed upon the section by the trial court is, in our opinion, contrary to the intention of the legislature because

there is a provision that no more than one of the assessments made and collected shall be reimbursed to the taxpayers in the district in any one year. . We think the confusion arises from the unfortunate use of the word "assessments," which appears in this instance to have been used synonymously with the word "installments."

It is quite apparent that the legislature intended to reimburse the two classes of taxpayers who had been required to pay special assessments in connection with the construction of hard roads. All of the statutes under which highway improvements have been made have provided that the landowner might pay the full amount of his assessment in one payment, or in equal installments over a period of years. In passing the act providing for reimbursement the legislature declared a purpose to reimburse both classes of taxpayers, first, by applying available road funds to the payment of the installments yet to become due, and second, to reimbursement of assessments or installments already paid. But it went further and expressly provided that no more than one of the assessments or installments should be reimbursed in any one year. It appears more reasonable to us that the legislature intended that the taxpayer who paid his assessment in full be limited to reimbursement of one-twentieth thereof, in any one year, the same as he who paid in installments. In so holding, we are applying the rule often invoked when ascertaining the true legislative intent.

In *Coney v. City of Topeka*, 96 Kan. 46, 49, 149 Pac. 689, it was said:

"It is familiar law that legislative enactments are not any more than any other documents to be defeated on account of errors, mistakes or omissions. Where one word or figure has been erroneously used for another or a word omitted, and the context affords the means of correction, the proper word or figure will be deemed substituted or supplied. This is only making the naked letter of the statute yield to its obvious intent." [Citing cases.]

(See, also, *Pfleiderer v. Brooks*; 122 Kan. 647, 253 Pac. 549; *City of Independence v. Turner*, 114 Kan. 731, 733, 220 Pac. 195; *Van Doren v. Etchen*, 112 Kan. 380, 382, 383, 211 Pac. 144; *State, ex rel., v. City of Hutchinson*, 106 Kan. 532, 534, 535, 188 Pac. 433; *Tatlow v. Bacon*, 101 Kan. 26, 31, 165 Pac. 835.)

The trial court also found that:

"Where payment and reimbursement are proper and funds are available therefor, the law contemplates both the payment of the current installment of benefit district tax (sinking fund and interest) and the reimbursement of

one installment of the benefit district tax previously assessed and collected during the same year."

That is to say, "that the taxpayer may in the same year, receive a refund of assessments paid, and also be relieved from paying the assessments coming due." We think not. The legislature said, first, the funds shall be applied to the reimbursement of the taxpayers of all installments as the same become due; second, the funds shall be applied to the reimbursement to the taxpayers of all assessments made and collected on such lands; third, no more than one of the assessments made and collected shall be reimbursed to the taxpayers in the district in any one year.

Of course, so far as installments to become due are concerned, there can be but one in each year. The act clearly provides that installments are to be paid as they become due, which means one per annum. The legislature limited the reimbursement of "assessments made and collected," to one assessment (installment) in any one year. The limitation proviso contains no reference to the question of payment of installments to become due. The literal language of the statute would perhaps require an affirmative answer to the question as returned by the trial court, but this does not dispose of the difficulty. Should the question be answered in the affirmative, a taxpayer paying on the installment plan would enjoy the cancellation of the installment coming due and the reimbursement of the installment in the same year. On the other hand, a taxpayer who had paid his assessment in full would be limited to the reimbursement of but a part, equivalent to one installment a year. Thus a marked discrimination would result between the two classes of taxpayers, which was not contemplated by the legislature. Undoubtedly the legislature intended to treat all alike. The taxpayer therefore may not in the same year receive a refund of the assessment paid and also be relieved from paying the assessment coming due.

The court also found that:

"Since there was no appraised value of the lands and improvements fixed and used in making the special assessments against the lands within one mile of the several roads for which the respective benefit districts involved in this action were created, there is no basis for computing an amount to be charged against the amount to be reimbursed to the taxpayer for benefit tax assessed and collected on lands within one mile of said roads, nor any basis for computing an amount to be deducted from the amount to be applied from the county and state road funds towards the payment for the benefit district tax

assessed against the property within one mile of said roads for the year 1927 and subsequent years. It therefore follows that the amount to be reimbursed to the taxpayer for the benefit taxes assessed and collected on lands within one mile of said respective roads is the total amount of the assessment made and collected; likewise, the amount to be applied from the county and state road fund towards the payment of benefit district tax assessed for the year 1927, and subsequent years, is the total amount of the assessments made or to be made for said years."

It is quite clear that the legislature intended to put a limitation on reimbursement to owners of land located within one mile of the highway on one class of road not to exceed an amount over and above two per cent of the value of the lands and improvements as the same was fixed in making such special assessments, and in another, an amount equal to fifty per cent of the assessment. It is strenuously argued that the road-improvement statutes contain no provision for appraisement of the real estate and the improvements thereon; that they provide only that the cost of building and improving a highway is to be apportioned among the various tracts of land in the benefit district according to the benefit accruing to the real property and improvements thereon; that the limitation of reimbursement contained in the act now under consideration refers to an appraisement which is nowhere provided for by law and which does not in fact exist, and that, therefore, the phrase is ineffectual and should be disregarded as was done in *State, ex rel., v. Gardner,* 122 Kan. 508, 252 Pac. 453, and that the owner of lands located within one mile of the highway be reimbursed in the same way as the owner of land located more than one mile therefrom. We cannot assent to this interpretation. We believe that the true intent of the legislature is found by simply disregarding or omitting the word "appraised," so that the statute will read: "Such payment and reimbursements to be made . . . upon the lands which lie within one mile of such road in the amount over and above two per cent of the value of said land and improvements as the same was fixed and used in making such special assessments." It is quite apparent that the draftsman of the act, perhaps being not entirely clear in his own mind, inadvertently inserted the word "appraised," before the word "value" and there exists no good reason for denying effect to this portion of the statute because of such inadvertent or unfortunate use of the word. The board of county commissioners in constructing the roads made a personal investigation of the lands and improve-

ments within the benefit district and placed thereon values according to zones, and in accordance with such values, assessments were levied. (*Hamm v. Jefferson County*, 113 Kan. 301, 214 Pac. 105.) The legislature, in enacting the reimbursement statute, concluded that the taxpayer owning lands within a mile from the highway should be reimbursed in part only. We think the language used should be given its full effect by omitting what might be termed the descriptive word "appraised."

The judgment is reversed and remanded with instructions to proceed in accordance with the views herein expressed.

HARVEY, J. dissenting.