No. 25,711.

THE STATE OF KANSAS, on the relation of CHARLES B. GRIFFITH, Attorney-general, *Plaintiff,* v. JOHN M. CRAWFORD, HENDERSON S. MARTIN, JOSEPH TAGGART, as Judges of the Court of Industrial Relations; and LEON BESSON, *Defendants.*

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*Deputy Mine Inspector—Must Pass Examination by Mine Examining Board.* The statute makes the passing of an examination at the hands of the mine examining board a qualification for appointment and service as a deputy mine inspector.

2. SAME—*Authority to Appoint Chief Mine Inspector.* The person appointed to the place designated in the court of industrial relations appropriation acts of 1921 and 1923 as chief mine inspector is a deputy mine inspector within the operation of the law requiring the examination of deputy mine inspectors.

Original proceeding in quo warranto. Opinion filed July 5, 1924. Demurrers to the petition overruled.

*Charles B. Griffith,* attorney-general, *John G. Egan,* and *Frank C. Baldwin,* assistant attorneys-general, for the plaintiff.

*Phil H. Callery,* of Pittsburg, for the defendant, Leon Besson; *Randal C. Harvey,* of Topeka, for the defendants, Henderson S. Martin and Joseph Taggart.

The opinion of the court was delivered by

MASON, J.:    The court of industrial relations by the vote of two of its members designated Leon Besson as "chief mine inspector." The state, on the relation of the attorney-general, brings this proceeding in quo warranto against Besson, joining as defendants the members of the industrial court, challenging his right to hold the place by reason of his not having passed an examination required by the statute as a qualification therefor.    The case is submitted upon demurrers to the petition filed by Besson and the two members of the industrial court who participated in his appointment.

The plaintiff contends that the position to which the defendant has been appointed is really that of a deputy mine inspector and that a deputy mine inspector is required to pass an examination and receive a certificate to be eligible to appointment.    The defendant asserts that the position to which he has been appointed is not that of a deputy mine inspector, and that the statute does not require a deputy mine inspector to take an examination.

1.    No statute in so many words requires that deputy mine inspectors shall be required to pass an examination.    If the requirement exists it results from the interpretation of this language in chapter 237 of the Laws of 1917, entitled "An act relating to coal mines and mining, creating an examining board, prescribing duties and penalties thereunder":

"    .    .    .    There shall be appointed by the governor a board of four examiners.    .    .    .    Two of said board shall be practical coal miners, who have had at least five years' experience as miners in the coal mines of Kansas.    Two shall be operators of coal mines in the state of Kansas or representatives thereof.    The four thus appointed shall select a fifth man to complete said board."    (§ 1; R. S. 74-2101.)

"No shot firers, shot inspectors, gas men or fire bosses, hoisting engineers, mine foreman or assistant mine foreman, shall be employed in any mine in the state of Kansas unless they shall have been examined by the state board of examiners and shall have been granted certificates as hereinafter provided: *Provided,* That men holding positions at the time this act goes into effect shall be granted certificates without examination.    Applicants for examination shall be able to read and write the English language and shall satisfy the

board of examiners that they are of good moral character, and not be a user of intoxicating liquors, and shall be citizens of the United States. All applicants shall be thoroughly examined with reference to the duties of the positions for which they have applied for certificates. Applicants for certificates as engineers shall be at least twenty-one years of age. Applicants for certificates as deputy mine inspectors, mine foreman, and assistant mine foreman, shall be at least twenty-five years of age and shall have had at least two years' experience as practical coal miners, mining engineers or men of general underground experience. Applicants for certificates as fire bosses or gas men, shot firers or shot inspectors shall have like qualifications and experience in the mines of Kansas or elsewhere, and shall also have had experience in mines that generate explosive and noxious gases. Applicants for certificates as deputy mine inspectors, mine foreman, assistant mine foreman, and hoisting engineers shall before examination pay to the board a fee of $2, and if successful a further fee of $3 for a certificate. Other applicants shall before examination pay to the board of examiners a fee of $1, and if successful a further fee of $2 for a certificate." (§ 3; R. S. 49-255.)

"The board shall grant certificates after examination to all applicants who have shown themselves familiar with the duties of the positions for which they desire certificates and are capable of performing such duties." (§ 4; R. S. 49-256.)

The statute expressly refers to "applicants for certificates as deputy mine inspectors," and says that "the board shall grant certificates after examination to all applicants who have shown themselves familiar with the duties of the positions for which they desire certificates and are capable of performing such duties." The act considered as a whole seems to us clearly to intend that in order to exercise the duties of a deputy mine inspector one must have passed an examination and received a certificate. The omission to include deputy mine inspectors in the enumeration of the appointees who are in set terms required to take the examination does not negative that intention, in view of the provision made for applications for certificates as deputy mine inspectors and for the examining board to grant them to such as show familiarity with and capacity to perform the duties of the position. (*Landrum v. Flannigan,* 60 Kan. 436, 56 Pac. 753.) The operation of a plan adopted by the legislature for the protection of life, the scope of which is evident from a consideration of the act relating to it as a whole, ought not to be hindered by reason of mere inaptitude or inadvertence of the language employed with respect to some details.

2. In 1883 a statute was enacted, section 9 of which provided for the appointment by the governor, with the advice and consent

39—116 Kan.

of the executive council, of an inspector of mines, whose duties were defined in other sections. (Laws 1883, ch. 117; R. S. 49-201 to 49-213.) In 1899 a state association of miners was created, the secretary of which became *ex officio* the state mine inspector, upon whom were devolved the powers and duties of that officer, who was authorized, by permission of the executive council, to appoint a deputy mine inspector. (Laws 1898, Special Session, ch. 33, §§ 2, 4, 5, 6.) In 1901, by amendment of the law of 1899, the officer who was to be *ex officio* state mine inspector was designated as state secretary of mine industries and was authorized, by permission of the executive council, to appoint a deputy mine inspector in each of four counties. (Laws 1901, ch. 256, §§ 2, 3.) In 1913 a department of labor and industry was created, the commissioner of labor and industry was made *ex officio* state mine inspector, being given full jurisdiction over mine inspection, and the law of 1899 (enacted at the special session of 1898) above cited, as amended in 1901, was repealed. (Laws 1913, ch. 217.) By section 4 the commissioner was authorized to appoint an assistant commissioner having five years' experience as a miner, and five "deputy state mine inspectors." In 1921 the jurisdiction conferred upon the commissioner of labor and industry was transferred to the court of industrial relations, which was authorized to employ "such deputy factory inspectors, deputy mine inspectors and clerical force of said department of labor and industry as necessary in carrying out the provisions" of the act. (Laws 1921, ch. 262.) Section 4 of the act of 1913 above referred to (Laws 1913, ch. 217) was repealed in the course of the revision of the statutes, the commission's note being "assistants and employees are now appointed by the court of industrial relations." (Commission's Report of December, 1922, p. 190.) The act by which the court of industrial relations was created authorized it to employ "a competent clerk, marshal, shorthand reporter, and such expert accountants, engineers, stenographers, attorneys and other employees as may be necessary to conduct the business of said court." (Laws 1920, ch. 29, § 11; R. S. 44-611.)

By virtue of the legislation so far noted the functions formerly exercised by the state mine inspector have been devolved upon the court of industrial relations. While the section providing for the appointment of a mine inspector by the governor and executive council has never been expressly repealed, and has been reprinted in the compilations of general statutes and in the Revised Statutes,

it has obviously been superseded by the later acts. The court of industrial relations is authorized to appoint deputy mine inspectors, but in the statutes to which reference has so far been made the term "chief mine inspector" has not been used. In 1921 the first section of an act entitled one "relating to the salaries of officers and employees of the court of industrial relations, . . . and making appropriations for the purpose of carrying into effect the provisions of this act," authorized that body to appoint at stated salaries certain officers and employees, including "five deputy mine inspectors, each $1,800." Section 2 made appropriation of $2,700 a year for "one chief mine inspector," and of $9,000 a year for "five deputy mine inspectors." (Laws 1921, ch. 2.) In 1923, in an act of a similar title, this language was used:

"The court of industrial relations is hereby authorized to appoint the following-named officers and employees of the court, beginning July 1, 1923, who shall hold their offices at the pleasure of said court, who shall receive the following annual salaries, and making appropriations therefor for the fiscal years ending June 30, 1924, and June 30, 1925:

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

One chief mine inspector....................... [1924] $2,700   [1925] $2,700
Five deputy inspectors......................... [1924] $9,000   [1925] $9,000"
                                            (Laws 1923, ch. 5, § 1.)

The defendant has been named as a part of the mine-inspection force, under the designation "chief mine inspector," which is obviously derived from the two statutes last referred to. In our judgment the position so described in these statutes is really that of a deputy mine inspector—the chief deputy mine inspector. The court of industrial relations itself occupies the position and performs the functions of the officer formerly called the "inspector of mines." It is authorized in general terms to appoint such employees as it may require, but this field with respect to the matter of mine inspection is covered by the specific provision for the appointment of deputy inspectors. The two statutes in which the term "chief mine inspector" is used are acts, as shown by their titles, for fixing the amount of salaries and making appropriations for their payment. While their language suggests that the authority for the appointment of the various officers named originated with them, it is obvious that such was not the real intention and understanding of the legislature, for the judges of the industrial court and various officers specifically provided for by statute are included. We hold that the authority of the court of industrial relations to make an appointment to the

place for which the defendant has been designated is derived not from these appropriation acts, but from the law of 1921 specifically authorizing it to appoint deputy mine inspectors, and that the position is that of a deputy mine inspector in such sense as to require its incumbent to possess the qualifications exacted in the case of a deputy mine inspector. This view accords with what we regard as the fair interpretation of the language of the statutes and with what appears to be the real intent of the legislature, for unless a purpose to the contrary should clearly appear the presumption is that a "chief mine inspector" appointed by the body which itself corresponds to the state inspector of mines—the administrative head of the department—is expected to meet the test applied to other persons making mine inspections to whom the term deputy is explicitly given.

The demurrers to the petition are overruled.

HARVEY, J., not sitting.